THE WIGGINS FERRY COMPANY

*v.*

THE ILLINOIS AND ST. LOUIS RAILROAD AND COAL CO.

*Filed at Mt. Vernon November 11, 1896.*

1. EVIDENCE—*sufficiency of, to prove uncertified copy of a public record.* The testimony of a witness that an uncertified paper, purporting to be a copy of a public record, corresponds with a copy formerly made by him, and that it was furnished him as a certified copy by the custodian of the record, is not sufficient to prove the copy, and will not cure its erroneous admission in evidence.

2. EJECTMENT—*when government plat is not corrected by later surveys.* Where a government plat does not show that the disputed tract was included in a certain grant, testimony that by later surveys the tract lies within the grant is insufficient to overcome the evidence afforded by the government plat and grant, unless it appears that the government has recognized or authorized such surveys.

3. PARTIES—*proper party plaintiff in ejectment upon consolidation of corporations.* Where, after beginning a suit in ejectment, the plaintiff corporation, by consolidation, is merged in a new corporation in which the former corporation's property is vested, the new corporation should be made plaintiff, and the fact that defendant admitted the facts and did not object at the trial will not prevent his doing so in the Supreme Court.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. A. S. WILDERMAN, Judge, presiding.

CHARLES W. THOMAS, for plaintiff in error:

Whatever title plaintiff had has vested in the new company by means of the consolidation, and it should have been substituted as plaintiff. 1 Thompson on Corporations, secs. 395-402, inclusive.

HAMILL & BORDERS, for defendant in error:

The mere fact that the court is not free from doubt upon a disputed fact will not authorize it to disturb the finding of the trial court sitting as a jury, when there is no controversy in the evidence and all the evidence introduced supports the finding of the court. *Reynolds* v. *Pal-*

*mer*, 70 Ill. 288; *Marble* v. *Bonhotel*, 35 id. 241; *DeForest* v. *Oder*, 42 id. 500.

The question whether the evidence is sufficient to sustain a verdict or finding of the court can only be raised by a motion for a new trial. *Railway Co.* v. *Rhodes*, 76 Ill. 285.

Where an objection is such as to be obviated by amendment if made in the court below, and is not urged below, it cannot be taken advantage of for the first time in this court. *Bowden* v. *Bowden*, 75 Ill. 111; *Railroad Co.* v. *Estes*, 96 id. 470; *Tug Boat* v. *Waldron*, 62 id. 221; *Thompson* v. *Hoagland*, 65 id. 310; *Royal Templars* v. *Curd*, 111 id. 283.

If defendant failed to object on the trial because the Louisville, Evansville and St. Louis Consolidated Railroad Company should have been substituted for plaintiff, it cannot now urge such objection. *Espen* v. *Hinchliffe*, 131 Ill. 468; *Clevenger* v. *Dunaway*, 84 id. 367; *Wright* v. *Smith*, 82 id. 527.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Defendant brought suit in ejectment against plaintiff in error to recover a strip of land two hundred and sixty feet wide off the north end of a tract of land designated as United States survey 759, in St. Clair county. There was a recovery on a trial by the court without a jury.

Survey 759 belonged to the commons of the village of Cahokia. Adjoining it on the north was survey 579. The controversy in the case related to the location of the boundary line between them. Plaintiff claimed title from the government, and offered in evidence section 5 of the act of Congress of March 3, 1791, (1 U. S. Stat. at Large, p. 221,) appropriating certain lands used by the inhabitants of the village as a common, to be used by them as such until otherwise disposed of by law. Plaintiff also offered the report of commissioners appointed under an act of Congress to report on the commons, which

is found on page 194, vol. 2, American State Papers, as follows:

"*On the Commons.*—By the fifth section of the law of Congress of 1791 it is provided that 'a tract of land, including the villages of Cahokia and Prairie Dupont, and heretofore used by the inhabitants of the said villages as a commons, be. and the same is hereby appropriated to the use of the inhabitants of said villages, respect- ively, as a common.' As the limits of the said commons were left by the said law undefined and could not be found described in the ancient records, it became a subject of compromise and agreement between the citizens of the said villages and the acting Governor of the Territory about the year 1797, and by their consent two tracts, containing, in the whole, five thousand four hundred acres, ordered to be laid off for this purpose, were surveyed accordingly by a surveyor appointed by Governor St. Clair. But on examination into this business the commissioners have discovered that the said surveys have been inaccurately and improperly made, that for Cahokia, in particular, containing (instead of about four thousand acres, as it ought to have contained,) about twenty thousand acres. This circumstance and the situation of the said tracts not accommodating the inhabitants, this board have thought proper, at their request, to permit a new location to be made for each of the said villages, on lands more conveniently situated for them. The limits and position of that part which has been relocated will be found described in the annexed plats. We have more readily done this as the land which the inhabitants abandon is of more value to the United States than that which they have taken."

The report gives no description of the commons, but refers to the annexed plat for their location and boundary. That plat was in evidence, and it was proved that the report of the commissioners re-locating the commons was approved, and the title confirmed accordingly, as so

re-located, by section 3 of the act of Congress of February 20, 1812.   (2 U. S. Stat. at Large, p. 78.)   Plaintiff also introduced certified copies of a lease executed by a supervisor of the village of Cahokia to the St. Clair Railroad and Coal Company, which was admitted to be the same corporation as plaintiff, by another name, and of a deed of the same premises executed by a supervisor of said village to plaintiff.   These instruments were authorized by acts of the General Assembly of the State of Illinois.

Whether the lease and deed were proved to cover all the land in dispute is the subject of argument by counsel; but assuming that such was the fact, the land so described and in dispute was not included in the plat offered in evidence by plaintiff, annexed to the report of the commissioners.   This was proved by the testimony of plaintiff's witness, the surveyor Hilgard; and a comparison of the plat with others introduced shows the same thing.   That plat, as stated in the report, showed the limits and position of the land which the inhabitants of Cahokia had agreed to take and which Congress confirmed to them.   So far as appears no other land was granted or confirmed to the inhabitants of Cahokia, from whom plaintiff claimed title.

The plat or map annexed to the report was made and certified by William Rector, surveyor, in May, 1808, and plaintiff offered in evidence what purported to be a copy of field notes of said William Rector of survey No. 759 of part of commons of Cahokia, dated the same month. This paper was not certified, and was objected to by defendant for that reason, but the objection was overruled. The claim made for its competency now is, that the witness Pitzmann afterward testified that he asked the custodian of the United States surveys of this State, at Springfield, to send him a certified copy of survey 759, and that was the paper he received in reply.   He further said the field notes corresponded with his field notes copied by him between 1856 and 1860, when the surveys

were in St. Louis. The copy appeared to have been made in 1881. It is claimed that this evidence made the paper admissible as a copy examined and sworn to by a credible witness, under section 18, chapter 51, of the Revised Statutes. The evidence did not meet the requirements of the statute or cure the error in the admission of the paper. Testimony that field notes shown on a paper made fifteen years ago from records at Springfield correspond with field notes copied from records at St. Louis about forty years ago, and with no evidence of the identity of the field notes at St. Louis and Springfield, will not suffice to prove the paper a copy of the record.

There was also evidence given of surveys of survey 759, located by notes of surveyors Deneen and Holbrook. Deneen was a county surveyor, who surveyed the land and planted corners somewhere from 1850 to 1860, and Holbrook made a survey in 1859 or 1860. The field notes and surveys of Deneen and Holbrook were not in evidence, but surveyors testified to following them and finding original corners. By so doing they found the tract in dispute located within the survey, and the lines so ascertained perhaps corresponded with the alleged copy of field notes erroneously admitted in evidence. So far as appears these field notes and surveys never came to the notice of the government and were never recognized or authorized. by it. The testimony was insufficient to overcome the evidence afforded by the government plat and grant.

. At the request of plaintiff the defendant admitted on the trial that plaintiff was one of the corporations consolidated in May, 1889, forming the Louisville, Evansville and St. Louis Consolidated Railroad Company, and plaintiff proved that the new corporation was in the hands of receivers. By the consolidation a new corporation was formed, which succeeded to the property and rights of the constituent corporations, and if plaintiff had any right in the land in question it passed to the

new corporation.   It is argued that this objection comes too late, because if made below, the corporation, having the right, might have been made plaintiff.   We think, however, that the objection is good.   The fact of consolidation not only showed that plaintiff had been merged in another corporation and had ceased to exist as a corporation, but the further fact that even if it had a corporate existence it had no title to the land.   It was like proving a conveyance from plaintiff to another, and showed that plaintiff had no title.

There was an objection to the introduction of secondary evidence of a lease and deed, but the question will not be likely to arise on another trial, and it will not be noticed.   It was not shown that plaintiff or its grantor had ever been in possession of the land in dispute, and it could only recover by showing some title, which it failed to do.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*