THE WIGGINS FERRY COMPANY

*v.*

LOUISVILLE, EVANSVILLE AND ST. LOUIS CON. R. R. CO.

*Opinion filed February 17, 1899—Rehearing denied April 7, 1899.*

1. EVIDENCE—*when survey is admissible to explain plat.* A survey recorded as the true survey of certain commons, made four days before the making of a recorded plat the purpose of which is to designate the "limits and position" of such commons, is admissible' in ejectment to explain the meaning of platted lines appearing upon certified copies of the plat already in evidence.

2. COMMONS OF CAHOKIA—*River L'Abbe is not the northern boundary of commons of Cahokia.* The northern boundary of the commons of Cahokia is as located by United States survey No. 759, and is not the River L'Abbe between its junctions with the Rigolet and Mississippi rivers.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. W. S. HARTZELL, Judge, presiding.

CHARLES W. THOMAS, for plaintiff in error.

HAMILL & BORDERS, for defendant in error.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The action below was ejectment by defendant in error to recover certain tracts of land in St. Clair county, described in the declaration by metes and bounds. It is not necessary to the full understanding of the points involved the description of the land should be here given, and the great length thereof would unnecessarily extend the opinion. It was stipulated defendant in error traced title from the inhabitants of the village of Cahokia, but plaintiff in error contends it does not appear from the proof title ever rested in the village. It is conceded if the village had title the judgment should be affirmed.

Section 5 of the act of Congress approved March 3, 1791, (1 U. S. Stat. at Large, p. 221,) appropriated certain lands, the boundaries whereof were not well defined, to be used by the inhabitants of the village of Cahokia,

in said county, as a common until otherwise disposed of by law.   A later enactment of Congress appointed commissioners to ascertain and define the limits of the common.   This committee submitted a report, which will be found set out *in extenso* in *Wiggins Ferry Co.* v. *Illinois and St. Louis Railroad Co.* 163 Ill. 238.   The report was approved by an act of Congress adopted February 20, 1812, (2 U. S. Stat. at Large, p. 78,) and the same act confirmed the title of the inhabitants of the village to the common as determined and re-located by the commissioners.   The commissioners did not embody in their report a description of the tracts included in the common, but annexed a plat to the report, which, as they certified in the body of their report, defined the "limits and position" thereof. Each of the parties offered in evidence certified copies of the plat.   Plaintiff in error insists it appeared from such plat the River L'Abbe marked the northern boundary of the common.   The tracts involved in this action are situated north of the bed of this river.   The original plat was made by one William Rector, a surveyor.   On each of said certified copies appears a certificate of such William Rector, surveyor, dated May 12, 1808, certifying the plat to be a correct map of the common field lands of the village of Cahokia "as surveyed by him."   Defendant in error, over the objection of plaintiff in error, produced in evidence a certified copy of a survey of said common made by said Rector May 8, 1808, being United States survey No. 759.   It was amply established by the testimony of surveyors the field notes of this survey located the northern boundary of the common field north of said River L'Abbe, and that the tracts involved in this litigation are within the limits of the common as located by that survey.   Plaintiff in error contends the survey was not competent to be received as evidence; that the plat alone was approved by the act of Congress and constitutes the only evidence as to the lands granted to the village. We do not, however, accept the contention of plaintiff in

error it appears with certainty from the plat the River L'Abbe is the northern boundary of the common. The markings on the plat produced by plaintiff in error, and the writing thereon, so far as necessary to be considered here, are as follows, as nearly as may be here reproduced:

The spaces between the parallel lines are intended to represent the lands of private owners adjoining the common, and the line which said parallel lines touch is supposed to represent the River Rigolet and the River L'Abbe above the junction of the two rivers, being the boundary of the common field and of the lands of such individual owners. Plaintiff in error contends the line marked "L'Abbe" should be accepted as representing the northern boundary of the common. This cannot be said to be true with any assurance of certainty. If the writing in the plat is resorted to, the space enclosed by this line marked

"L'Abbe" and the other lines marked "Mississippi River" and "Rigolet" is not the whole but only a part of the common. The line marked "L'Abbe" may as well be regarded as intended to denote the location of that stream through the common. It will be observed the River Rigolet, to the point of confluence with the River L'Abbe, is marked on the plat as the boundary line of the common and the lands of private owners enclosed within the parallel lines, and that the River L'Abbe above the point of confluence with the Rigolet is traced on the plat as a boundary line at least of like strips of private lands. The sole purpose of the plat was to designate the "limits and position" of the common, and we can conceive of no reason for tracing the course of the river L'Abbe above the point of the junction of the two streams unless that portion of the river marked the dividing line between the common and the lands of private owners. This view is consistent with the designation of the space south of the line marked "L'Abbe" as "part of the common of Cahokia."

In this state of uncertainty we do not think the court erred in admitting the survey in question in evidence. The plat on its face bore evidence it was drawn, and intended to be drawn, in accordance with a survey made by the draftsman of the plat. Survey 759 was made by the draftsman but four days before the plat was made, and was placed of record as the true survey of the common of Cahokia. There is every reason to believe, and none to question, it was the identical survey from which the plat was drawn. It seems to us clear it was competent to receive it in evidence as explanatory of the plat and as locating the said common. The uncertainty as to the meaning of the platted line marked "L'Abbe" is removed by the survey. It cannot be denied the premises in dispute lie within the limits of the common as surveyed and within the limits of the plat considered in connection with such survey.

The judgment is affirmed.             *Judgment affirmed.*